UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO. 3:12-CR-76 JD |
| | ) | |
| YULIA ABAIR | ) | |

## OPINION & ORDER

On March 14, 2013, a jury found Yulia Abair guilty of eight counts of structuring currency transactions to evade statutory reporting requirements, each a violation of 31 U.S.C. § 5324(a)(3). [DE 53]. On March 28, 2013, the defendant filed three post-trial motions: (1) a renewed motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 (a similar motion was made orally and denied at the close of the government's case-in-chief) [DE 56]; (2) a renewed motion to dismiss the indictment as multiplicitous, or in the alternative to vacate certain counts or merge all counts into one for purposes of conviction and sentencing [DE 58]; and (3) a motion for a new trial [DE 57]. The latter two motions are related. The defendant believes she is entitled to a new trial because the court's failure to dismiss all but one count of the indictment during trial resulted in prejudice to the defendant which cannot be corrected by simply merging the counts at this time. The government responded to each motion [DE 62; DE 63; DE 64], and the defendant declined to reply. The court now resolves each motion as follows.

## DISCUSSION

**A.     Motion for Judgment of Acquittal [DE 56]**

Abair first moved for a judgment of acquittal pursuant to Rule 29 at the close of the government's case-in-chief, and that motion was denied. But a defendant is permitted to renew any

1

such motion within 14 days after a guilty verdict or after the court discharges the jury, whichever is later. *See* Rule 29(c)(1). Abair's motion is timely and is properly before the court. Abair accurately identifies the three elements which the government was required to prove with respect to each charge of structuring at trial: (1) that the defendant had knowledge that financial institutions in the United States are required to report currency transactions in amounts greater than $10,000.00; (2) that the defendant structured the currency transaction in question for the purpose of evading this reporting requirement; and (3) that the transaction involved one or more domestic financial institutions. The parties stipulated as to the third element, but Abair argues that insufficient evidence was introduced to support a guilty verdict with respect to the first and second elements.

When a defendant moves for judgment of acquittal pursuant to Rule 29, the question the court must ask is whether evidence exists from which any rational trier of fact could find the "essential elements" of the crime beyond a reasonable doubt. *United States v. Hach*, 162 F.3d 937, 942 (7th Cir. 1998); *United States v. Fearn*, 589 F.2d 1316, 1321 (7th Cir. 1978) (discussing with approval the Fifth Circuit rule that a motion for judgment of acquittal "must be granted when the evidence, viewed in the light most favorable to the government, is so scant that the jury could only speculate as to the defendant's guilt, and is such that a reasonably-minded jury must have a reasonable doubt as to the defendant's guilt.") (citing *United States v. Herbernman*, 583 F.2d 222 (5th Cir. 1978); *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973)). The movant "faces a nearly insurmountable hurdle [because courts] consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Blassingame*, 197 F.3d 271, 284 (7th

Cir. 1999), cert. denied, *Fuller v. United States*, 529 U.S. 1138 (2000) (quoting *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir. 1997)). In short, if after viewing the evidence in the light most favorable to the prosecution, the court *does* believe that a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt, the motion must be denied. *United States v. Pribble*, 127 F.3d 583, 590 (7th Cir. 1997). If, on the other hand, the record is devoid of evidence from which a jury could find guilt, the motion must be granted. *See* Fed. R. Crim. P. 29; *United States v. Pulido*, 69 F.3d 192, 205-06 (7th Cir. 1995).

Sufficient evidence was introduced to support a guilty verdict in this case. The government's case with respect to the two challenged elements rested on a combination of direct and circumstantial evidence. As for direct evidence, Yulia Abair was interviewed by IRS agent Nicolette Droza and police sergeant Brian Shnick on October 28, 2011. At trial, each witness testified about what Abair told them over the course of the interview. Agent Droza asked the defendant about the reporting threshold. She asked if the defendant was aware that banks were required to report transactions over $5,000.00, and the defendant replied that she thought the threshold was $10,000.00, indicating knowledge. The defendant argues that Droza's testimony only proves Abair knew of the reporting requirement in October of 2011, not in May of 2011 when the transactions took place. But there was more to Agent Droza's testimony. According to Agent Droza, Abair told Agent Droza that the reason she did not want to deposit $10,000.00 was because she was aware that there would be a report and she did not want the government to look at her. [DE 61 at 14-15]. That suggests both knowledge and an evasive purpose at the time the transactions were made. Sergeant Schnick's testimony corroborated Agent Droza's account of the interview in full. [DE 61 at 33].

As for circumstantial evidence, the nature of the transactions themselves – a series of cash

deposits totaling close to $70,000.00, but spread over several days in such a way that no one day's deposit was higher than $10,000.00 – can rationally support the inference that the defendant knew of the $10,000.00 "ceiling" at which she would need to report, and then she intended to evade it. As the government notes, that inference is further supported by the fact that the defendant always had additional cash on hand when she deposited amounts near, but not over, $10,000.00 at the bank. [DE 60 at 61]. A rational jury could certainly conclude that had Abair truly intended to move the money as quickly as possible, she would have deposited all of the cash she had on hand each time she went to the bank. But instead, she deposited amounts that would not trigger reporting requirements. The inference of knowledge and purpose may not be a necessary one to draw under these circumstances, but it is a certainly a rational one to draw.

Viewing the evidence in the light most favorable to the prosecution, the court does believe that a rational trier of fact could find the essential elements of the crimes charged beyond a reasonable doubt. As a result, Abair's motion for a judgment of acquittal must be denied. *United States v. Pribble*, 127 F.3d 583, 590 (7th Cir. 1997).

**B.     Motion to Dismiss, Vacate or Merge Counts [DE 58]**

At the close of the government's case-in-chief, the defendant orally moved (for the first time) to dismiss the indictment as multiplicitous. In a written order issued March 13, 2013, this court held that the defendant had waived any challenge to the indictment itself by failing to raise the issue prior to trial. The court also held, however, that the defendant would have the opportunity to challenge any conviction or sentence as multiplicitous in the event that the jury returned guilty verdicts on multiple counts. [DE 46]. The jury did return guilty verdicts on all eight counts charged, and the defendant's present motion is just such a challenge.

This court's previous concerns about waiver no longer apply. While it is undoubtedly true that Fed. R. Crim. P. 12(b)(2) "requires defendants to bring multiplicity claims based on the *indictment* before trial[,]" *see United States v. Griffin*, 765 F.2d 677, 682 (7th Cir. 1985) (emphasis added), it is also undoubtedly true that it would be inappropriate for this court to enter a final judgment convicting and sentencing a defendant on multiplicitous counts *after* trial, particularly where the issue has repeatedly been brought to the court's attention. *See, e.g., United States v. Brooks*, 2013 WL 1222743 at *4 (7th Cir. March 26, 2013) (table opinion). It is therefore proper to revisit the issue at this time.

The indictment in this case consists of an introductory paragraph, followed by a list of transactions charged in separate counts:

> In or around May 2011, in the Northern District of Indiana,
>
> **YULIA YUREVNA ABAIR,**
>
> defendant herein, knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structured the following transactions with a domestic financial institution:
>
> [*eight transactions, organized by date, listed as separate counts*]
>
> All in violation of Title 31, United States Code, Section 5324(a)(3)[.]

[DE 1 at 1]. Each of the separately charged transactions represented by the bracketed line in the above quotation includes the count number (1-8); the date of the transaction; the day of the week of the transaction; and the amount of the transaction. Each transaction was a cash deposit in an amount greater than $6,000.00 but less than $10,000.00. The deposits charged with respect to the eight counts add up to a total of $67,060.00. From essentially the beginning of this prosecution, the defendant's theory of the case has been that she was depositing this money into her local account

5

at Lake City Bank in order to purchase a home, the closing price of which was approximately $67,000.00. Further, she has maintained that she withdrew all of the money which went into the indicted deposits from Citibank Moscow, through ATMs, in $400.00 increments. The money in her Citibank Moscow account was the result of the sale of a condominium she previously owned in Russia. The trial evidence did not contradict those basic background facts.

Abair now claims that a judgment of conviction on eight separate counts for the conduct described above would be multiplicitous. A claim of multiplicity – rooted in the Double Jeopardy Clause – alleges that separate counts in a criminal case in fact charge a single offense. *United States v. Marquardt*, 786 F.2d 771, 778 (7th Cir. 1986); *see also Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where, as here, the same statutory offense is charged as two or more separate counts, the proper question is whether Congress intended the counts to constitute separate "unit[s] of prosecution." *Bell v. United States*, 349 U.S. 81, 82-83 (1955). If the intent of Congress is unclear, "the ambiguity should be resolved in favor of lenity." *Id.* at 83. "[D]oubt will be resolved against turning a single transaction into multiple offenses[.]" *Id.* at 84; *see also United States v. Handakas*, 286 F.3d 92, 98-99 (2d Cir. 2002) (invoking the *Bell* rule in a structuring financial transactions context), *overruled on other grounds by United States v. Rybicki*, 354 F.3d 124, 133 (2d Cir. 2003).

### 1. The Proper "Unit of Prosecution"

31 U.S.C. § 5324(a)(3), the statutory section charged in this case, forbids structuring transactions with the purpose of evading statutory reporting requirements. *Ratzlaf v. United States*, 510 U.S. 135, 140 (1994). The Seventh Circuit has previously answered the question of what constitutes a separate "unit of prosecution" under § 5324(a)(3):

> The indictment was in twelve counts, and the first issue on appeal is whether this multiplication of counts was proper. Count one charged a conspiracy to violate

section 5324(3) and count two charged a violation of the statute itself, a violation consisting of the making of the ten deposits, viewed as an effort to "structure" an $81,500 transaction. The only problem with these two counts is that the Davenports were trying to structure a transaction of $100,000, not $81,500. They just hadn't deposited the last $18,500 when they were caught. But that is a detail of no significance.

The last ten counts charge each of the ten deposits as a separate violation of the statute. These counts should have been thrown out. The statute does not forbid the making of deposits. It forbids the structuring of a transaction. The Davenports received $100,000 in cash, which they wanted to deposit. The receipt and deposit of the $100,000 were the transaction that the Davenports structured by breaking it up into multiple deposits, of which ten had been made when they were caught. There was one structuring, one violation. The government's position leads to the weird result that if a defendant receives $10,000 and splits it up into 100 deposits he is ten times guiltier than a defendant who splits up the same amount into ten deposits. It could, we suppose, be argued – though the government does not in fact argue – that the more deposits a defendant makes, the smaller each one is likely to be, and that the smaller the individual deposit the less likely the bank is to aggregate them. But against this it can be argued with equal plausibility that a proliferation of deposits increases the probability of apprehension and punishment, by creating a thicker paper trail and reinforcing an inference of evil intent. Unable as we are to say that a defendant's conduct is more dangerous the greater the number of deposits, we are unable to construct any rationale for the government's position.

We can find no case in which the issue of the unit of violation of section 5324(3) has been discussed; but **our impression is that until this case the practice was to charge a single count of structuring**. *United States v. Scanio*, 900 F.2d 485, 487 (2d Cir. 1990). **We conclude that the structuring itself, and not the individual deposit, is the unit of crime.**

*United States v. Davenport*, 929 F.2d 1169, 1171-72 (7th Cir. 1991) (emphasis added). *Davenport* thus defines the proper unit of prosecution in a broad manner: "The **receipt and deposit of the $100,000** were the transaction that the Davenports structured by breaking it up into multiple deposits[.]" *Id*. at 1171 (emphasis added). Tying the receipt and deposit of the funds together in this way does seem a little unusual. The Code of Federal Regulations, for example, defines a "transaction," for purposes of section 5324(a)(3), to include simply a "deposit," without stretching the concept backwards to necessarily include the origin of the deposited funds, and the Seventh

7

Circuit's own pattern jury instructions are consistent with the C.F.R. definition. *See* 31 C.F.R. § 1010.100(bbb)(1); Seventh Circuit Criminal Pattern Jury Instruction for 31 U.S.C. § 5324(a)(3) (titled "Structuring Financial Transactions – Definitions"). Nonetheless, this court is bound to follow *Davenport* where the facts require it.

Aside from *Davenport,* there is little binding precedent to guide the way. Most courts outside of our circuit look to the "source" of the funds involved in order to decide the proper number of prosecutorial units. *See Handakas*, 286 F.3d at 98-99 (source of multiple deposits was the same large sum of cash, which was the product of illegal payments made by a business owner to himself, and so each check deposit could not be considered a separate crime; the source of the funds was not the check itself); *United States v. Nall*, 949 F.2d 301, 308 (10th Cir. 1991) (holding that there was only one source for three separate bank deposits where all of the money came from one lump sum payment to the defendant, and that there could only be one structuring count); *United States v. Dashney*, 937 F.2d 532 (10th Cir. 1991) (relying on *Davenport* to find only one instance of "structuring" where there was only one "cash hoard" involved); *United States v. Kushner*, 256 F.Supp.2d 109, 112-14 (D.Mass. 2003) (over 100 counts of structuring were held multiplicitous when the source of the funds was the same: profits of the defendant's unlicensed business, contained in multiple bank accounts). But it is not clear whether our circuit agrees with the "source" rule. *See United States v. Cassano*, 372 F.3d 868, 882 ("Merely because the misappropriated funds were derived from the same source does not mean they are part of a single transaction."), *vacated by Cassano v. United States*, 543 U.S. 1109 (2005).[1] [2]

---

[1]  The court is aware that vacated opinions have no legal effect. *See United States v. Sigma Intern., Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (*en banc*) (noting that vacated opinions are "officially gone. They have no legal effect whatever. They are void. None of the statements made in [them] has any remaining force and cannot be considered to express the view of [the issuing] Court."). But, given the dearth of the authority on the issue, any window into the

8

Based on the foregoing authorities, the defendant argues that this case is really about one "structuring," one violation: the transfer of approximately $67,000.00 from Abair's accounts at Citibank Moscow to her local accounts at Lake City Bank. The government disagrees, and argues that *Davenport* is distinguishable. The government's position is that each deposit was a separate transaction with separate intent, and that the "structuring" in each instance was Abair's structuring of the movement of her on-hand cash into her bank account. But ultimately the government indicates it has no objection to a merger of the counts, explaining that the multiple convictions have little impact upon sentencing.

### 2. Application to the Case

In this court's estimation, the takeaway from *Davenport* seems to be that the court should consider whether the facts suggest a broader view of what it means to "structure a financial transaction" than simply taking currency out of one's pocket (or "cash hoard") and depositing it in the bank. If they do, then the indictment, judgment or sentence should be adjusted to fit the facts. Certainly, the pocket-to-bank model can provide the basis for a prosecution in some cases:

> The statute's aim was to prevent people from either causing the (usually innocent) bank to fail to file a required report or defeating the goal of the requirement that large cash deposits be reported to the Internal Revenue Service *by breaking their cash hoard into enough separate deposits to avoid activating the requirement*.

*Davenport*, 929 F.2d at 1173 (emphasis added) (citing S. Rep. No. 433, 99th Cong., 2d Sess. 22 (1986); *United States v. Scanio*, 900 F.2d 485, 488 (2d Cir. 1990)). But where the transaction clearly involves more than that – such as where it clearly involves taking, or receiving, the funds from a first

---

Seventh Circuit's rationale is worth considering.

2   Interestingly, *Cassano* reads *Davenport* to focus on "transactions" rather than the "source," despite the fact that the circuits who have embraced the so-called "source rule" found its basis, for the most part, in *Davenport*. *See Nall*, 949 F.2d at 308; *Dashney*, 937 F.2d at 541.

9

source, and then temporarily personally possessing them while structuring their deposit into a second source, the proper prosecutorial unit can be as broad as the transaction consisting of the "receipt and deposit" of the funds. *Davenport*, 929 F.2d at 1171.

It is clear that this case is more than a pocket-to-bank transaction. The government's argument is that each deposit represented a separate violation with separate intent because, leading up to each deposit, Abair possessed over $10,000.00 in cash. But, by the government's own admission, her on-hand cash wasn't a "hoard" in the usual sense. It was the product of almost countless $400.00 ATM withdrawals[3] from Abair's account at Citibank Moscow over the course of the weeks preceding her string of deposits. This case is a situation, like *Davenport*, where the allegedly structured "transaction" is the defendant's movement, in multiple withdrawals and deposits, of money from Point A (accounts[4] in Citibank Moscow derived from the proceeds of the sale of defendant's condo in that country) to Point B (accounts at Lake City Bank). It is not an easy question, but the Supreme Court has cautioned that "ambiguity should be resolved in favor of lenity." *Bell*, 349 U.S. at 83. "[D]oubt will be resolved against turning a single transaction into multiple offenses," *id*. at 84, and in this case that means treating the defendant's eight currency deposits as one structured transaction.

The defendant's motion is therefore granted, to the extent that this court will merge all counts of conviction into one violation of the statute at sentencing, to be reflected in the judgment entered

---

[3] The opinion of the court is that the individual ATM withdrawals were no more the "source" of the funds than the cashed checks were the "source" of the funds in *Handakas*, 286 F.3d at 98-99. Each is just a conduit for moving money from one location to another; neither is a place to keep your money in and of itself.

[4] The presence of multiple source accounts, to the extent that the money was moved from CDs into Abair's checking account, makes no difference. *Kushner*, 256 F.Supp.2d at 112-14 (multiple bank accounts were the source of funds which were still considered part of the same episode of structuring).

on the record thereafter.

**C.     Motion for a New Trial [DE 57]**

In her third motion, Yulia Abair requests a new trial. She believes that the presentation of multiplicitous counts in the indictment to the jury prejudiced her irreparably by making the jury more likely to convict on all counts. Courts faced with a request for a new trial evaluate "whether the improprieties impacted the outcome of the trial, and we will reverse only if there is a reasonable probability that, in the absence of the improprieties, the defendant would have been acquitted." *United States v. McGee*, 408 F.3d 966, 984 (7th Cir. 2005) (citing *United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1995)).

The court already addressed the defendant's concern in its previous order on the multiplicity issue [DE 46], where it stated:

> [T]o the extent that the defendant might worry the jury will be more likely, as a result of the sheer number of the eight felony counts charged, to *assume* that the defendant is a criminal, the court reminds the defendant that various jury instructions exist to prevent that from happening. Among other things, the jury will be instructed not to draw any assumptions of guilt based on the indictment or on the fact that the defendant has been charged with criminal offenses. In fact, the jurors were screened for their ability to honor that rule during *voir dire*. The jury will also be instructed very clearly to consider each count separately. The Seventh Circuit assumes that juries follow their instructions, and that the instructions work. *See United States v. Rodriguez*, 929 F.2d 1224, 1228 (7th Cir. 1991) ("Generally, we assume the jury followed the court's instruction and that the court's curative measures were sufficient to prevent any harm"); *see also United States v. Fulk*, 816 F.2d 1202, 1205 (7th Cir. 1987). This particular jury affirmed, during *voir dire*, that it can and will follow the court's instructions, and that should alleviate any potential that the mere fact that the defendant is charged with eight crimes will result in a propensity conviction, or in a conviction for some non-specific "larger" crime than what is charged.  And the danger of any prejudice is unlikely in a case, like this one, where each count alleges a discrete act, the government's evidence of the individual transactions is strong, and any jury compromise is unlikely. *See e.g., Ball v. United States*, 470 U.S. 856 (1985) (Stevens, J., concurring); *United States v. Shanks*, 97 F.3d 977, 980-81 (7th Cir. 1996).

11

[DE 46 at 5]. The court stands by its previous finding that enforcing the defendant's waiver of the issue during trial created no risk of prejudice. Moreover, the court notes that nearly nothing about the presentation of this case would have changed had the defendant properly raised the multiplicity issue prior to trial. The exact same evidence would have been presented, the exact same theories of the case would have been argued to the jury, and the exact same law would have governed their deliberative process. There is not a reasonable probability that, had the outcome of the multiplicity issue during trial been different, the jury would have acquitted the defendant. To the contrary, the defendant has provided no compelling reason why that would affect the jury's decision at all. The motion [DE 57] is denied.

## CONCLUSION

For the reasons stated herein, Yulia Abair's motion for a judgment of acquittal [DE 56] is **DENIED**. Her motion for a new trial [DE 57] is **DENIED**. Her motion to merge counts of conviction at sentencing [DE 58], however, is **GRANTED**.

SO ORDERED.

ENTERED:   June 21, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court